22987. MOORE et al. v. STATE HIGHWAY DEPARTMENT.

ARGUED SEPTEMBER 13, 1965—DECIDED OCTOBER 7, 1965.

*Pittman & Kinney, H. E. Kinney, T. L. Shanahan,* for plaintiffs in error.

*Arthur K. Bolton, Attorney General, Richard L. Chambers, Assistant Attorney General, Horace E. Campbell, Jr., Deputy Assistant Attorney General, Harry T. Lawrence,* contra.

ALMAND, Justice. This case is here from the Court of Appeals by writ of certiorari. The decision of that court is reported in *Moore v. State Highway Dept.,* 111 Ga. App. 474 (142 SE2d 120). The case is one of condemnation. The State Highway Department brought its action in which it sought to condemn the land of S. Z. Moore and others. Ultimately, the case was tried before a jury, a verdict and judgment were had, and the condemnor's motion for a new trial was overruled. The case was taken to the Court of Appeals where it was held: "The court

erred in charging the jury that in ascertaining the value of condemned land that had been used for agricultural purposes, it could consider all legitimate purposes to which the property could be appropriated other than the purposes for which it was used at the time of the taking, in the absence of evidence that there was a reasonable probability that it might be used as an approach to an airport or any other use than agriculture." *State Highway Dept. v. Moore*, 111 Ga. App. 474, 475, supra. Three judges dissented from this holding on the ground that there was evidence that the land in question was suitable for other uses and that this was sufficient to justify the charge in question. They also dissented on the ground that the State Highway Department was not harmed by the giving of the charge in any event.

We are of the opinion that the view taken by the dissenters in the Court of Appeals is correct and that it was error to reverse the trial court. *Code* § 36-505 provides that "In estimating the value of land when taken for public uses, it is not restricted to its agricultural or productive qualities, but inquiry may be made as to all other legitimate purposes to which the property could be appropriated." This Code section clearly states that the suitability of land for other uses, and not the probability that other uses will be made of the land, is the criterion. In *Harrison v. Young*, 9 Ga. 359 (4), it was held: "The value of land taken for public use, is not restricted to its agricultural or productive qualities, but inquiry may be made as to all other legitimate purposes to which the property could be appropriated." See also *Atlantic C. L. R. Co. v. Postal Tel.-Cable Co.*, 120 Ga. 268, 281 (48 SE 15, 1 AC 734) and *Savannah, A. & N. R. Co. v. Williams*, 133 Ga. 679, 681 (66 SE 942). It is clear under *Code* § 36-505 and the cited cases that the test is whether the land *could* be used for other purposes, and not whether the land *would* be used for other purposes.

Under the construction we give the statute, there is evidence to support the charge in question. The condemnor's witness testified as follows: "Q. Did you inquire if or find out that part of this property or the adjoining property in this area had been sought and priced to build an airport down there; would it be suitable for that? A. Yes, sir." The condemnee's witness testi-

fied as follows: "Another reason was the fact that the land was —we investigated it to use as an air strip and he asked us at that time $1,000 an acre for just one edge of it and that was putting it—in other words, that was not bothering his farm completely. . . Q. And where was the area that you wanted to build an airport? A. It was right down in here. Q. How much land were you going to take? A. We were not going to take too much of his because we had—mainly it was for the approaches, and not actually a part of the runways. Q. You were just going to take a little bit of his land in there for approaches; is that why he wanted $1,500 an acre for it? A. Well, he just wanted $1,000 an acre. Q. Is that the reason, because you were going to take a little part of it? A. Yes, but that was not his cultivating land. This is kind of swampy area here. Q. You could not use a swampy area for an airport could you? A. No, but you can for the approaches. Q. You can use a swampy area for the approaches? A. Yes, but you have to clear it out. It would have to be cleared out. Q. You mean that you can go down in a swamp in an airplane? A. Well, the plane comes down and actually the landing strip was on beyond that. . . Q. Now, what is wrong with this big tract, this 91 acres here? A. Because it is not fit for anything except pasture land except one little strip down there. Q. I thought you said it was good for an airport? A. For the approaches." This is testimony from which the jury could find that the land in question was suitable for airport uses.

There was evidence to support the charge in question. The Court of Appeals erred in holding that the charge was improper in the absence of evidence that there was a reasonable probability that the land taken would be used for purposes other than agricultural purposes.

*Judgment reversed. All the Justices concur, except Mobley, J., not participating for providential cause, and Cook, J., disqualified.*