45889. STATE HIGHWAY DEPARTMENT v. HODGES.

WHITMAN, Judge. By condemnation a strip of land for limited access highway construction was taken through condemnee's land. The condemned strip divided the condemnee's land into two portions such that after the taking plaintiff had a tract of approximately 1,700 acres remaining on one side of the condemned strip and approximately 28 acres remaining on the other side.

1. Unsatisfied with the condemnor's estimate of just and adequate compensation, the condemnee appealed the issue to a jury and called one R. L. Harrison, among others, to testify as an expert as to the value of the 15 acres taken, and also as to the consequential damages to the two remaining portions. When asked to give his opinion of the consequential damages to the remaining 1,700 acre portion, he replied: "Well, when you've got wooded land in or near the city many uses could be had for that particular land, and I have in several instances subdivided nice timber tracts, cut a street in there, if you sell and they begin to build some houses and dedicate the roads to the county, the roads are maintained, and in so many residential devel-

opments you can sell a lot on a street facing a hundred by two hundred, which we'll say a half an acre of land we call it in the city, certainly four or five hundred dollars for a half an acre and the land would bring eight hundred or a thousand dollars, and if you dropped it way down it would still have a great value, but you're not gonna have a very successful development next to an interstate road where the trucks are roaring by all night. I know I sleep in motels now on the interstates and why they built them right close I don't know, but they roar all night and wake you up several times. People would'nt want to build a house very close to it. And certainly the two hundred or more acres in that near the road would be greatly damaged. The damage is enhanced by people throwing out cigarettes, cigars, causing fire that could damage the whole thing. It's hard to tell where the Forestry Department could stop a timber fire. Those hazards are not there now because the traffic is not there, the people are not there, but fire hazards are great when you put a road through because it will happen. You have people that roam off of the highways and go out through your woods and do damage of one kind or another, and, of course, along with that cause the fires, the poachers. And certainly it's not a real estate development. Now a small loss would be that sometimes we have a game preserve. Certainly there will be no wild life close to that road, not apt to for a long time. It'll go back to the swamps or Altamaha or some place, but to me there's considerable damage, and more particularly if a person wanted to subdivide it. Q. Do you have any opinion as to what that damage would amount to? A. Well, I think very definitely that the figure I have is conservative. I think there's consequential damages of least ten thousand five hundred dollars because a small tract subdivided would bring that in a hurry when you go to selling lots on a decent street or road that you have."

The condemnor objected to this testimony on the ground that his opinion was based on speculation and conjecture and not on those matters which may properly be considered in making such calculations. The objection was overruled and is enumerated as error.

The evidence was that the land, at the time of the taking, was

devoted to timber production and also to raising livestock and wildlife. Under proper evidence, in determining just and adequate compensation for property taken by eminent domain, the jury may consider the value of the property for uses other than that for which it was being used at the time of the condemnation. *State Hwy. Dept. v. Robinson,* 103 Ga. App. 12, 16 (118 SE2d 289). But the fact that one's land is merely adaptable to a different use is not in itself a sufficient showing in law to consider such different use as a basis for compensation. If there is not a present demand for such use, it must be made to appear that such use of the land is so reasonably probable as to have an effect on the present value of the land. *State Hwy. Dept. v. Howard,* 119 Ga. App. 298, 303 (167 SE2d 177); *Ga. Power Co. v. Livingston,* 103 Ga. App. 512, 513 (119 SE2d 802). In the present case there was evidence that the land in question was nicely wooded and physically suited for residential subdivision if such a demand ever arose. But the evidence fell far short of showing that such use was reasonably probable and had in fact affected the value of the land. For a case in which the evidence concerning the condemned land did indicate a reasonable probability for use as a residential subdivision, see *State Hwy. Dept. v. Thomas,* 106 Ga. App. 849, 850 (128 SE2d 520).

It was error to admit the testimony in question over the condemnor's timely and well taken objection. A new trial is required.

The condemnor's remaining enumerations, which relate to certain other evidentiary rulings, are either without merit or are not likely to arise on a new trial and will not be discussed.

*Judgment reversed. Hall, P. J., and Eberhardt, J., concur.*
SUBMITTED JANUARY 13, 1971—DECIDED MAY 21, 1971.

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Richard L. Chambers, Assistant Attorney General, Alvin Leaphart,* for appellant.

*Reinhardt, Ireland, Whitley & Sims, Bob Reinhardt, Thomas & Howard,* for appellee.